IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN'S QUALITY PLUS, LLC, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-CV-2311 |
| SHAFFER BUILDERS, INC., and | : | |
| RICHARD SHAFFER, | : | |
|     Defendants. | : | |

**SURRICK, J.**                                                                                                   **AUGUST 12 , 2008**

**MEMORANDUM & ORDER**

Presently before the Court is Plaintiff Bryan's Quality Plus, LLC's Motion to Dismiss Counts II and III[1] of Defendants' Counterclaim Pursuant to Fed. R. Civ. P. No. 12(b)(6), (Doc. No. 7). For the following reasons, Plaintiff's Motion will be GRANTED.

**I.     BACKGROUND**

In its Counterclaim, Defendant Shaffer Builders alleges that on or about February 2, 2007, Defendant Shaffer Builders and Plaintiff Bryan's Quality Plus entered into a Subcontract Agreement ("Agreement") pursuant to which Plaintiff was to complete the piling work for a commercial project undertaken by Defendant at 125 E. Elm Street, Conshohocken, Pennsylvania ("the Project"). (Doc. No. 4, Counterclaims ¶ 5.) The contract price for the work to be performed was $152,250.00 and included the labor, materials, equipment, and services, which Plaintiff agreed to provide. (*Id.* ¶ 7; Doc. No. 1 ¶ 8; Doc. No. 4 ¶ 8.) Defendant relied upon Plaintiff's representations that the work could be completed in a timely manner and scheduled

---

[1] Count III has been misnumbered in Defendants' Counterclaims as a second Count II.

construction of the Project accordingly.  (Doc. No. 4, Counterclaims ¶ 8.)   Defendant alleges that Plaintiff specifically represented that it would complete the work in seven days, that it could install in excess of fifty (50) piles a day, that its performance and equipment would vastly surpass the conventional methods of performing this work, that the scope of the work under the Agreement included the furnishing and installation of the pile tension brackets and fasteners, and that it had sufficient credit to purchase materials necessary to complete the work.  (Doc. No. 4, Counterclaims ¶¶ 15, 20.)  The parties agreed to sign a written contract, although some work was completed prior to the execution of the contract.  (Doc. No. 4 ¶¶ 9, 17.)

Plaintiff failed to complete the work within the time proscribed.  (Doc. No. 4, Counterclaims ¶ 9.)  As a result, on February 8, 2007, Defendant amended the contract to agree that Plaintiff would provide another crew to install the piling, and Defendant would provide a "crane, hammer, air compresor [sic], hoses, etc., and a crane operator."  (*Id.*; Doc. No. 4, Ex. B.) On February 13, 2007, Defendant further agreed to reimburse Plaintiff for the engineering fees associated with the piling work on the Project.  (Doc. No. 4, Counterclaims ¶ 10.)

On or about March 8, 2008, Plaintiff submitted an Application and Certification for Payment to Defendant, requesting payment in the total amount of $159,062.00 for work completed.  (Doc. No. 1 ¶¶ 20-21; Doc. No. 1, Ex. C.)  On or about May 7, 2007, Plaintiff submitted an Application and Certification for Payment to Defendant in the amount of $355,502.00, requesting the unpaid balance of the previous invoice plus $196,440.00 in new charges.  (Doc. No. 1 ¶¶ 23-24; Doc. No. 1, Ex. D.)

Defendant alleges that Plaintiff failed to complete the work in a "timely manner,"  failed

to pay for the materials or the second crew, and failed to authorize release of engineering reports[2] for the Project.  (Doc. No. 4, Counterclaims ¶ 11.)  Defendant alleges that Plaintiff failed to satisfy all conditions precedent to payment and therefore Defendant had no obligation to pay Plaintiff.  (Doc. No. 4. ¶¶ 29-30.)

Plaintiff filed this lawsuit on June 7, 2007, alleging a number of claims including a claim for breach of contract demanding payment of all amounts due.  (Doc. No. 1 ¶¶ 31-68.)  On August 21, 2007 an answer was filed which included counterclaims.  The counterclaims allege Breach of Contract (Count I), Fraud (Count II), and Negligent Misrepresentation (Count III).  (Doc. No. 4, Counterclaims, ¶¶ 5-24.)  Plaintiff has moved to dismiss the Fraud and Negligent Misrepresentation claims in Count II and Count III.  (Doc. No. 7.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a counterclaim for failure to state a claim.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of counterclaims.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  In evaluating a motion to dismiss, all allegations in the counterclaims and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  *Rock v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the [counterclaims']

---

[2] These piling reports have been the subject of several discovery motions.

allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). However, a court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court may dismiss a claim "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys.*, 883 F.2d at 247.

## III.  DISCUSSION

The two counts that Plaintiff has moved to dismiss both stem from alleged misrepresentations made by Plaintiff to Defendant that it would complete the work in seven days, that it could install in excess of fifty (50) piles a day, that its performance and equipment would vastly surpass the conventional methods of performing this work, that the scope of the work under the Agreement included the furnishing and installation of the pile tension brackets and fasteners, and that it had sufficient credit to purchase materials necessary to complete the work. (Doc. No. 4, Counterclaims ¶¶ 15, 20.)

Plaintiff argues that "the 'gist of the action' doctrine bars causes of action sounding in tort when a contract is central to the claim and when the duties in question are the product of a mutual agreement between the parties." (Doc. No. 7 at 5.) Defendant responds that the "gist of the action" doctrine applies to claims for fraud in the performance of a contract. (Doc. No. 10 at 3-4.) Defendant argues that since the fraud and negligent misrepresentation here were designed to induce Defendant to enter into the contract with Plaintiff, the "gist of the action" doctrine does not bar these claims. (*Id.*) Plaintiff responds that its pre-contractual promises are incorporated in the terms of the contract between the parties and Defendants' fraud and misrepresentation claims must therefore fail. (Doc. No. 11 at 2.) Plaintiff argues that to the extent that these

promises were not incorporated, they would be extrinsic evidence which would contradict the terms of the fully integrated contract.  (*Id.* at 2-3.)   As such, the parol evidence rule would bar consideration of those promises.[3]  (*Id.* at 3.)

The "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The purpose is to preclude plaintiffs from pleading ordinary breach of contract claims as tort claims.  *Id.*  The difference between the two has been explained as follows:

> Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals . . . .  To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super. Ct. 1992) (citing *Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158 (E.D. Pa. 1978) (citing in part *Glazer v. Chandler*, 200 A.2d 416, 418 (Pa. 1964))).  "Although mere non-performance of a contract does not constitute a fraud . . . it is possible that a breach of contract also gives rise to an actionable tort . . . . 'To be construed as in tort, however, the wrong ascribed to defendant must be the gist

---

[3] Paragraph 1.2 of the Agreement provides:
This Subcontract shall, when accepted by Subcontractors and signed by Contractor become the exclusive contract between the parties, and all prior representatives or agreements, whether written or oral, not incorporated herein are superseded.  If Subcontractor has commenced performance of its work hereunder prior to the execution of this Agreement, it is specifically understood that all work shall be included in the work hereunder, and that such work and payments, as well as the future work to be performed hereunder shall be in conformance with and subject to the terms and conditions hereunder.
(Doc. No. 4, Ex. A ¶ 1.2.)

5

of the action, the contract being collateral.'" *Bash*, 601 A.2d at 829 (citing *Closed Circuit Corp. v. Jerrold Elec. Corp.*, 426 F. Supp. 361, 364 (E.D. Pa. 1977) (citing 1 C.J.A. Actions § 46)). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" *Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002) (citing *Bash*, 601 A.2d at 830). *See also Owen J. Roberts School Dist. v. HTE, Inc.*, Civ. A. No. 02-7830, 2003 WL 735098, at *2 (E.D. Pa., Feb. 28, 2003) ("[T]he court examines the complaint, and, if possible, the contract itself, to determine the source of the duty that the defendant allegedly breached. If the duty arose from the parties' agreement, then the plaintiff cannot assert a tort claim and is limited to contractual remedies. If, however, the plaintiff alleges that the defendant breached a socially-imposed duty to which the contract is merely collateral, then the plaintiff can proceed on a tort theory of liability." (internal citations omitted)).

"A tort claim is barred by the gist of the action doctrine if: (1) it arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *Grimm v. Washington Mut. Bank*, Civ. A. No. 08-0828, 2008 WL 2858377, at *3 (W.D. Pa. July 22, 2008) (citing *Williams v. Hilton Group, PLC*, 261 F. Supp. 2d 324, 327-28 (E.D. Pa. 2003) (citing *eToll*, 811 A.2d at 19)). "In determining whether the 'gist of the action' doctrine applies, a court must determine whether the source of the duties breached were 'intertwined' with obligations under the contract, or if they were merely collateral." *Grimm*, 2008 WL 2858377, at

\*3 (citing *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999)).

Fraud in the inducement is in some limited circumstances an exception to the "gist of the action" doctrine. *Grimm*, 2008 WL 2858377, at \*3. The question of "whether the gist of the action doctrine precludes a fraud claim based on the defendant's negotiation-stage statements" was discussed by the court in *Owen J.Roberts School Dist.*, 2003 WL 735098 at, \*3. After examining several cases the court concluded that although the doctrine "does not categorically bar or exempt such a claim, [but] it does preclude the claim if the fraudulent statement becomes the basis for a contractual duty." *Id.* See also *United States Claims, Inc. v. Saffren & Weinberg, LLP*, Civ. A. No. 07-0543, 2007 WL 4225536, at \*11 (E.D. Pa. Nov. 29, 2007) ("Where the fraud or negligent misrepresentation clearly arose from the contract, courts have been quick to apply the gist of the action doctrine.") (citing *Horizon Unlimited, Inc. v. Silva*, Civ. A. No. 97-7430,1998 WL 88391, at \*4-5 (E.D. Pa. Feb. 26, 1998) (holding that "gist of the action" doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature)). Where the fraudulent misrepresentations ripen into contractual duties, the "gist of the action" doctrine will apply. *See Owen J. Roberts School Dist.*, 2003 WL 735098, at \*3-4 (citing *Factory Market, Inc. v. Schuller Int'l, Inc.*, 987 F. Supp. 387, 395 (E.D. Pa. 1997) (dismissing fraud claim where the plaintiff alleged that the defendant knew when promising to repair a roof that the roof could never be made watertight and where, since the claim was truly grounded in defendant's failure to perform its contractual obligation, the "gist of the action" doctrine precluded the claim); *Galdieri v. Monsanto Co.*, 245 F.Supp.2d 636, 650

(E.D. Pa.) (holding that plaintiffs who claimed that they were fraudulently induced by defendant to enter into employment agreements when defendant failed to develop an incentive compensation plan as promised, were barred by the "gist of the action" doctrine since defendant had contractually agreed to establish the plan but failed to do so); *Werner Kammann Maschinefabrik, GmbH v. Max Levy*, Civ. A. No. 01-1083, 2002 WL 126634, *6 (E.D. Pa. Jan 31, 2002) (dismissing a fraudulent misrepresentation claim because the duty breached, to supply a furnace with enclosed heating elements, was created and grounded in the contract itself)).[4]

In this case, an examination of the contract[5] and the surrounding circumstances reveals that Defendants' claims of fraud and misrepresentation involve matters that became contractual duties. Defendant alleges that Plaintiff misrepresented that he would be able to complete the work in seven days at a pace of more than fifty piles a day. (Doc. No. 4, Counterclaims ¶¶ 15, 20.) However, the Agreement has a provision dealing with the scheduling of the Project. The

---

[4] When pre-contractual misrepresentations do not ripen into contractual duties the "gist of the action" doctrine will not preclude the claim. *See Am. Guarantee & Liab. Ins. Co. v. Fojanini*, 90 F. Supp. 2d 615, 617 (E.D. Pa. 2000) (finding where a defendant had agreed to market an American firm's pizza vending machines in Italy and relied upon the representations that the firm was financially sound, the "gist of the action" doctrine did not bar a fraud claim because "the misrepresentation did not concern specific duties outlines in the contract"); *Asbury v. Automotive Group LLC v. Chrysler Ins. Co.*, Civ. A. No. 01-3319, 2002 WL 15925, at *3 (E.D. Pa. Jan. 7, 2002) (upholding a fraudulent misrepresentation claim where the misrepresentation stemmed not from the defendant's failure to perform its contractual duties, but rather a misrepresentation as to the actual terms of the contract)).

[5] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Burlington Coat*, 114 F.3d at 1426 (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Agreement specifically provides that Defendants are responsible for the scheduling on the Project and that Plaintiff will complete its work on the project in accordance with the schedule developed by Defendant.[6]  (Doc No. 4, Ex. A ¶ 7.)  Defendants allege that Plaintiff misrepresented it would furnish and install the pile tension brackets and fasteners, and that it had sufficient credit to purchase the materials necessary to complete the Project.  (Doc. No. 4, Counterclaims ¶¶ 15, 20.)  Again, the Agreement contains a provision dealing with the obligation of Plaintiff to supply sufficient labor, materials, and equipment to maintain the progress of its work.[7]  (Doc No. 4, Ex. A ¶ 6.1.)  Finally, Defendants allege that Plaintiff misrepresented that the quality of its work would "vastly surpass conventional installation methods."  (Doc. No. 4, Counterclaims ¶¶ 15, 20.)  Paragraph 15 of the Agreement specifically

---

[6] Paragraph 7 of the Agreement provides:
Subcontractor acknowledges that the entire Project must be complete and ready for use to the Owner's satisfaction in accordance with the schedule developed by Contractor, subject to agreed upon extensions of time.  Subcontractor agrees to complete its work in accordance with the schedule developed by the Contractor and that he/she will bear responsibility for any delays (including any penalties or damages assessed) arising from its work.
(Doc No. 4, Ex. A ¶ 7.)

[7] Paragraph 6.1 of the Agreement provides:
Subcontractor shall start work at the site within three (3) working days after notice from Contractor and shall supply sufficient labor, materials, equipment and/or services to maintain progress of the work of the Subcontractor to the satisfaction of Contractor and perform the same at such times and places as designated by Contractor.  In the event the Subcontractor delays the progress of the work of Subcontractor or the furnishing of labor, materials, equipment, and/or services or fails in the performance of any of the provisions of this Subcontract, or employs men or uses materials or equipment which may cause strikes of other labor troubles by workmen or other personnel employed by the Owner, Contractor or other contractors or suppliers at the project site, or if it should make a general assignment for the benefit of its creditors, or if a receiver should be appointed on account of its insolvency or inability to meet its obligations.
(Doc No. 4, Ex. A ¶ 6.1.)

provides for the quality of the work to be performed by Plaintiff on the Project.[8] (Doc No. 4, Ex. A ¶ 15.)

Clearly, the misrepresentations allegedly made by Plaintiff are intertwined with Plaintiff's obligations under the contract. The tort claims essentially duplicate the breach of contract claim. The "gist of the action" doctrine bars tort recovery here for what are clearly breaches of contractual duties.[9]

---

[8] Paragraph 15 of the Agreement provides:
Subcontractor hereby guarantees all labor, materials, equipment, services and work furnished hereunder against all defects which may develop within one (1) year from date of *final completion* or within the guarantee period set forth in the Contract Documents, whichever is longer. Pursuant to such a guarantee, Subcontractor agrees to remove, repair and/or replace, as Contractor may require, without charge to Contractor, any and all defective workmanship, materials, equipment and work; to pay any and all costs, expenses and damages, including labor charges, in connection therewith, as well as for removal, repair and replacement of any other work which may be damaged as a result thereof; to remedy any defects, latent or patent, expect those due to ordinary wear and tear or improper use and maintenance by any entity other than Subcontractor; and to pay for all damage to the property of the Owner, the Contractor or any other party resulting therefrom. Such corrective work shall be accomplished within seven (7) days or, if such correction cannot reasonably be completed with such seven (7) day period, such other periods as reasonably established by Contractor after receipt of notice from Contractor to do so. All guarantees and warranties herein provided shall extend to the Owner, or other awarding authority, and to Contractor. The foregoing shall be in addition to, and not in lieu of, any and all warranties and remedies provided by law or required under the Contract Documents.
(Doc No. 4, Ex. A ¶ 15 (emphasis in the original).)

[9] In the alternative, even if the contract did not specifically address all of the statements that form the basis of Plaintiff's alleged fraud and misrepresentation, we agree with Plaintiff's argument that the parol evidence rule is fatal to Defendants' Counterclaims since the Agreement contains an integration clause, (*see* Doc. No. 4, Ex. A ¶ 1). "[T]he parol evidence rule bar[s] consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations [are] fraudulently *omitted from the contract*." *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) (emphasis in the original) (citing *HCB Contractors v. Liberty Place Hotel Assoc.*, 652 A.2d 1278, 1279 (Pa. 1995)). As there is no allegation here that any representations were fraudulently omitted from the Agreement and the Agreement contains an integration clause, Defendants will

Since the statements that form the basis of Defendants' claims in Counts II and III go to the material terms of the contract, Counts II and III of the Defendants' Counterclaim must be dismissed.[10]

An appropriate order follows.

---

not be able to offer evidence of Plaintiff's prior statements to prove his Counterclaims. *See Bray v. Dewese*, Civ. A. No. 07-4011, 2008 WL 623824, at *2 (E.D. Pa. Mar. 6, 2008) (holding the same).

[10] We note that Defendants claims in Counts II and III would also fail under the economic loss doctrine. As with the "gist of the action" doctrine, "the economic loss rule reflects the concern that tort law (unlike contract law) is not generally intended to compensate parties for losses suffered as a result of a breach of duties which are assumed only by agreement; to recover in tort, there must be a breach of a duty of care imposed by law and a resulting injury." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 273 (Pa. 2005) (citing *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1271 (M.D. Pa. 1990)). *See also Ellenbogen v. PNC. Bank, N.A.*, 731 A.2d 175, 188 n.26 (Pa. Super. Ct. 1988) ("The economic loss doctrine . . . 'bar[s] a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property.'" (citing *Public Service Enterprise Group, Inc. v. Philadelphia Electric Co.*, 722 F.Supp. 184, 193 (D.N.J. 1989))).

Although the Pennsylvania Supreme Court has recognized an exception to the economic loss rule in claims of negligent misrepresentation under section 552 of the Restatement (Second) of Torts, *Bilt-Rite*, 866 A.2d at 288 (Pa. 2005), that exception does not apply to this case. The exception, as discussed in *Bilt-Rite*, is intended for a narrow subset of negligent misrepresentation actions in which one of the parties is in the business of supplying information. *See id.* at 285-86. "[T]he proper inquiry [in determining when the exception applies] is not whether the damages alleged are purely physical or economic, but instead is whether the source of the duty the defendant allegedly breached is based in contract or tort." *Silverstein v. Percudani*, Civ. A. No. 04-1262, 2005 WL 1252199, at *11 (M.D. Pa. May 26, 2005) (citing *Bilt-Rite*, 866 A.2d at 288).

The matter before us does not fit into the *Bilt-Rite* exception. In this case the duties breached are clearly contractual and not tortious. *See Retail Brand Alliance, Inc. v. Rockvale Outlet Center, LP*, Civ. A. No. 06-01857, 2007 WL 403885, at *10 (E.D. Pa. Jan 31, 2007) (finding *Bilt-Rite* inapplicable where Plaintiff was not in the business of supplying information and the Plaintiff and Defendant had a direct contractual relationship).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN'S QUALITY PLUS, LLC,  :  <br>　　　　Plaintiff,　　　　　　　: <br>　　　　　　　　　　　　　　　: | CIVIL ACTION |
| 　　v.　　　　　　　　　　　　: <br>　　　　　　　　　　　　　　　: | NO. 07-CV-2311 |
| SHAFFER BUILDERS, INC., and　: <br>RICHARD SHAFFER,　　　　　　: <br>　　　　Defendants.　　　　　: | |

## **ORDER**

AND NOW, this <u>12th</u> day of August, 2008, upon consideration of Plaintiff/Counterclaim Defendant Bryan's Quality Plus's Motion to Dismiss Counts II and III of Defendants Shaffer Builders, Inc. and Richard Shaffer's Counterclaim, (Doc. No. 7), and all papers submitted in support thereof and in opposition thereto, it is ORDERED that the Motion is GRANTED and Counts II and III of the Counterclaim are DISMISSED.

　　IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　R. Barclay Surrick, Judge